UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KONSTANTINO APOSTOLAKIS,                    Case No. 24-CV-04372(JAV)

           Plaintiff,

   -against-

DOUGH BROOKLYN #1 LLC, d/b/a DOUGH, and
STEVE KLEIN,

           Defendants.
-------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT


Adam C. Weiss, Esq.
THE LAW FIRM OF ADAM C. WEISS, PLLC
3 School Street, Suite 303
Glen Cove, New York 11542
(516) 277-2323 (tel.)
(516) 759-2556 (fax)
Email: adam@acweisslaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

FACTS........................................................................................................................................... 1

STANDARD OF REVIEW........................................................................................................... 2

ARGUMENT................................................................................................................................. 3

  I. The Motor Carrier Exemption Applies Because the Plaintiff Transports Property

    in Interstate Commerce........................................................................................................ 4

    A. Dough is Properly Classified Within the Jurisdiction of the Secretary by

      Virtue of Operating as a "Motor Carrier".................................................................... 5

    B. Plaintiff Falls Within an Exempt Classification Under the Federal Motor

      Carrier Act.................................................................................................................... 8

    C. Plaintiff's Cause of Action for Failure to Pay Overtime under State Law is

      Subject to Dismissal Due to the Motor Carrier Exemption......................................... 9

  II. This Court Should Decline to Exercise Supplemental Jurisdiction Over the

    Plaintiff's Remaining State Law Claims............................................................................ 10

CONCLUSION........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010).................................. 8

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986)..................................................... 3

*Avery v. Chariots for Hire*, 748 F.Supp.2d 492 (D. Md. 2010)........................................... 8

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002)................................ 6, 8

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).................................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)......................................................... 3

*Dalton v. Sabo, Inc.*, 2010 WL 1325613 (D. Or. Apr. 1, 2010).......................................... 9

*Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266 (S.D.N.Y. 2008)...................... 4, 8

*Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*,
   865 F. Supp. 2d 257 (E.D.N.Y. 2012)................................................................ 5

*Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993).......................................... 7

*Kahn v. IBI Armored Serv., Inc.*, 474 F. Supp. 2d 448 (E.D.N.Y. 2007)................................. 9

*Klein & Co. Futures, Inc. v. Bd. Of Trade of the City of New York*,
   464 F.3d 255 (2d Cir. 2006)....................................................................... 10

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006).................................. 10

*Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947).................................................. 5

*Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990).................................................. 3

*Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir. 1991)............................................ 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................ 3

*Morris v. McComb*, 332 U.S. 422 (1947)............................................................ 5, 7

*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947)........................................... 4

*Reich v. American Driver Serv, Inc.*, 33 F.3d 1153 (9th Cir. 1994)...................................... 7

*Resch v. Krapf's Coaches Inc.*, 14-3679 (3d Cir. May 12, 2015)......................................... 7

*Songer v. Dillon Res., Inc.*, 618 F.3d 467 (5th Cir. 2010).................................................................. 7

*Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008)............................... 9

*Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943)................................................................. 7

*Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041 (GWG),

   2015 WL 305362 (S.D.N.Y. Jan. 23, 2015)................................................................................ 5

**Statutes and Rules**

29 C.F.R. § 782.2(a)............................................................................................................... 4, 5

29 C.F.R. § 782.7(b)(1).............................................................................................................. 7

28 U.S.C. § 1367(c)(3)............................................................................................................. 10

29 U.S.C. § 207(a)..................................................................................................................... 4

29 U.S.C. § 213......................................................................................................................... 4

49 U.S.C. § 13102(14).............................................................................................................. 5

49 U.S.C. § 13501................................................................................................................. 4, 6

49 U.S.C. § 31132(1)................................................................................................................ 5

49 U.S.C. § 31502..................................................................................................................... 4

Fed. R. Civ. 56(a).................................................................................................................. 1, 3

## PRELIMINARY STATEMENT

Defendants, Dough Brooklyn #1 LLC, d/b/a Dough, and Steve Klein, through their undersigned attorneys, The Law Firm of Adam C. Weiss, PLLC, submit this Memorandum in Support of their Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a) to dismiss all claims in Plaintiff Konstantino Apostolakis's Complaint. Plaintiff's federal overtime claims under the Fair Labor Standards Act are barred by the Motor Carrier Exemption, as his employment involved operating a commercial vehicle in interstate commerce. Plaintiff's state overtime claims under New York Labor Law are subject to dismissal for the same reason. Because no viable federal claims remain, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Complaint should be dismissed in its entirety, with prejudice.

## FACTS

Dough Brooklyn #1 LLC, d/b/a Dough, operates a bakery and catering business with five locations in New York City, including its primary location at 14 W. 19th Street, New York, where Plaintiff Konstantino Apostolakis was based. 56.1 Stmt. ¶ 19. Employing 15–20 workers at main stores and approximately three at satellite locations, Dough conducts significant interstate commerce through catering events and wholesale deliveries across New Jersey, Connecticut, and Pennsylvania. *Id.* ¶ 3, 20.

From December 2018 to November 2023, Dough employed Apostolakis, initially as a kitchen worker and, from December 2020 onward, as a delivery driver. *Id.* ¶ 4. In his driver role, Apostolakis primarily operated a Ford Transit van, registered to Dough, with a gross vehicle weight of 11,000 pounds, suitable for commercial interstate transport. *Id.* ¶ 5, 6. On rare occasions, when the Ford Transit was unavailable for maintenance, he used a Chevy cargo van.

Id. ¶ 7. Apostolakis's delivery routes covered Dough's stores in Brooklyn, Manhattan, and Astoria, and regularly extended to New Jersey for warehouse pick-ups, tire changes, and catering deliveries, occurring more than five times per week. Id. ¶ 8, 10. EZ Pass records from December 2021 to December 2023 and delivery logs confirm these frequent interstate trips, with Apostolakis provided an EZ Pass for out-of-state travel as needed. Id. ¶ 9, 11, 12. He also delivered supplies for Dough's out-of-state catering events in New Jersey, Connecticut, and Philadelphia. Id. ¶ 11.

As a salaried delivery driver, Apostolakis earned $1,200 per week, which increased to $1,400 per week after one year, reflecting his exempt status. Id. ¶ 13. He worked from 6 a.m. to 2 p.m., seven days per week, except for his final week, when he worked five days, and did not punch in or out due to his salaried position. Id. ¶ 14, 15. Dough's pay records from 2019 to 2021 verify that Apostolakis was paid correctly for all hours worked, and he deposited weekly paychecks without issue, despite some checks issued under alternate names. Id. ¶ 16, 17. Beyond driving, Apostolakis collected money owed to Dough from stores twice weekly as part of his duties. Id. ¶ 18.

In October 2023, Apostolakis voluntarily resigned to pursue other work, providing two weeks' notice. Id. ¶ 21. During a November 2023 meeting with manager Vicky Pantazi, who translated, and Steve Klein, Apostolakis confirmed his resignation without raising any pay-related concerns. Id. ¶ 22. Klein, an owner focused on high-level operations, had no role in Apostolakis's day-to-day supervision, scheduling, or payment decisions, which were managed by Pansazis and a third-party payroll service, Paychex. Id. ¶ 13, 19.

2

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. 56(a). A dispute as to a material fact is "genuine" only if sufficient evidence exists for a reasonable jury to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the case. *Id*. at 248.

The party seeking summary judgment must set forth and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After this initial burden is met, the non-moving party bears the burden of demonstrating disputes of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must produce evidence to support its position, and may not rest on conclusory allegations or bare assertions. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In a FLSA action, the employer bears the burden of proving that its employees come within the scope of an exemption from the FLSA's overtime requirements. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991). As such, once the employer proves that it is exempt from the FLSA's overtime requirements, the burden shifts to the employee to demonstrate disputes of material fact. *See Id.* (citing *Anderson*, 477 U.S. at 250 ).

Here, summary judgment in favor of Defendants is appropriate because there are no material facts in dispute, and the MCA exemption applies to Dough's delivery driver, Plaintiff Apostolakis. As a matter of law, Defendants are entitled to judgment in their favor.

3

# ARGUMENT

**I.     The Motor Carrier Exemption Applies Because the Plaintiff Transports Property in Interstate Commerce**

The FLSA requires that employees engaged in interstate commerce be paid "at a rate not less than one and one-half times the [employee's] regular rate" of pay for work in excess of forty hours in any workweek. 29 U.S.C. § 207(a). However, Congress has exempted a broad range of employees from this rule. *See* 29 U.S.C. § 213. For example, the motor carrier exemption exempts from the FLSA's overtime provisions any employee with respect to whom the Secretary of Transportation (the "Secretary") has power to establish qualifications and maximum hours of service pursuant to 49 U.S.C. § 31502.

Section 31502 grants the Secretary the authority to prescribe qualifications and maximum hours of service of employees of a motor carrier. This grant of authority applies to transportation by motor carrier of property in interstate or foreign commerce on a public highway. 49 U.S.C. § 13501.

Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and the employee's activities. 29 C.F.R. § 782.2(a). First, the employer must be within the jurisdiction of the Secretary by virtue of operating as a "motor carrier," as defined by the statute. *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 77 (S.D.N.Y. 2008). Second, the individual employee must fall within an exempt classification, which the Supreme Court has held is a determination to be made by the courts. *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707 (1947).

In making this determination, the name given to the position is not controlling, rather it is the character of the activities involved in the employee's performance of his job that controls.

4

*Pyramid Motor Freight Corp.*, 330 U.S., at 707-08. "According to the Department of Labor regulations, the employee must 'engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.'" *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041 (GWG), 2015 WL 305362, at 5 (S.D.N.Y. Jan. 23, 2015) (quoting 29 C.F.R. § 782.2(a)). The four broad categories of workers whose duties are said to directly affect the safety of vehicle operation are: (1) drivers, (2) mechanics, (3) loaders, and (4) helpers of the first three. Id. However, "[i]f not all of an employee's activities affect the safety of operations of motor vehicles in interstate commerce, a court must consider 'the character of the activities rather than the proportion of either the employee's time or his activities.'" *Id.* (quoting *Morris v. McComb*, 332 U.S. 422, 431-32 (1947)); *see also Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 266 (E.D.N.Y. 2012) ("What matters is the degree to which a worker's activities affects safety, not the amount of time the worker spends on that activity." (*citing Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674-75 (1947)).

A. Dough is Properly Classified Within the Jurisdiction of the Secretary by Virtue of Operating as a "Motor Carrier"

In order for the Secretary to have jurisdiction over Defendants, Dough must qualify as a "motor carrier," i.e., a "person providing commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Pursuant to the current statutory framework, a "commercial motor vehicle" is "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle ... has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C.

5

§ 31132(1). In this case, it is undisputed that the Ford Transit van regularly driven by Apostolakis was used in interstate commerce and had a gross vehicle weight of 11,000 pounds. 56.1 Stmt. ¶ 6.

Dough owned the Ford Transit van during Apostolakis's employment as a delivery driver from December 2020 to November 2023. *Id.* ¶ 4, 6. The Ford Transit, with a gross vehicle weight of 11,000 pounds, was registered to Dough and primarily used by Apostolakis for his delivery duties. *Id.* ¶ 5, 6. Accordingly, it cannot be disputed that Dough's vehicle is a "commercial motor vehicle" for purposes of the Motor Carrier Act because its gross vehicle weight exceeds 10,001 pounds.

Second, in order for the Secretary of Transportation to have jurisdiction over Dough, it must be engaged in the transportation of passengers or property "between a place in (A) a State and a place in another State; [or] (B) a State and another place in the same state through another State." 49 U.S.C. § 13501. The undisputed facts of this case show that Apostolakis regularly made delivery runs across state lines. Apostolakis conceded that throughout his employment as a driver, he drove Dough's vehicles in interstate commerce, with routes regularly extending to New Jersey for warehouse pick-ups, tire changes, and catering deliveries, occurring more than five times per week. *Id.* ¶ 8, 10. EZ Pass records from December 2021 to December 2023 confirm these frequent interstate trips, and Apostolakis was provided an EZ Pass for out-of-state travel. *Id.* ¶ 9, 12. He also delivered supplies for Dough's catering events in New Jersey, Connecticut, and Philadelphia. *Id.* ¶ 11.

Even if Plaintiff were to argue that some of his work was limited to the State of New York, that, in of itself, does not defeat the instant motion. In *Bilyou v. Dutchess Beer Distributors, Inc.*, the Second Circuit recognized that "[e]ven if a carrier's transportation does

6

not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one state are involved in a practical continuity of movement in the flow of interstate commerce." 300 F.3d 217, 223 (2d Cir. 2002) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)). *See also Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993); *Reich v. American Driver Serv, Inc.*, 33 F.3d 1153, 1155, n. 3 (9th Cir. 1994); 29 C.F.R. § 782.7(b)(1).

Even when employees of a motor carrier engage in interstate transportation "during a minority of their time [working]," the MCA exemption still applies due to the jurisdiction that the responsible federal agency has over setting the employees' qualifications and maximum hours of service. *Morris*, 332 U.S., at 437-438. In *Morris*, the regional Wage and Hour Division Administrator for the Department of Labor brought a suit against an employer, a "common carrier," for failing to pay its drivers and mechanics overtime under the FLSA. *Id.*, at 424-425, 426. The Court found that the employer was an interstate carrier even where only 4% of trips were made in interstate commerce. *Id.*, at 432.

Here, the amount of time that Apostolakis spent in interstate trips was significant, with Dough's delivery vehicles crossing state lines more than five times per week. 56.1 Stmt. ¶ 8. In addition, Dough's business includes significant interstate commerce through catering and wholesale deliveries to New Jersey, Connecticut, and Pennsylvania, further evidencing its status as a motor carrier subject to the authority of the Secretary of Transportation. *Id.* ¶ 3, 20. *See e.g., Songer v. Dillon Res., Inc.*, 618 F.3d 467, 469-70 (5th Cir. 2010) (holding that truck drivers fell within MCA exemption where employer required them to meet driver qualification requirements of the FMCSA); *Resch v. Krapf's Coaches Inc.*, 14-3679, at 4 (3d Cir. May 12, 2015) (granting

summary judgment where unrefuted evidence reflects adherence to federal regulations regarding drivers).

Accordingly, Defendants are a motor carrier within the meaning of the Motor Carrier Act.

B. Plaintiff Falls Within an Exempt Classification Under the Federal Motor Carrier Act

Apostolakis, as a driver, is overtime exempt under the FMCA. The case law regarding the motor carrier exemption's application to drivers is well-established. *See e.g., Morris*, 332 U.S. at 430 ("The drivers are full-time drivers of motor vehicles well within the definition of that class of work by the Commission if the work is done in interstate commerce."); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (finding that the Secretary of Transportation had jurisdiction over defendant's drivers because they operated vehicles in interstate commerce); *Dauphin*, 544 F. Supp. 2d at 274 (noting that "[t]he activities of drivers affect safety of operations of motor vehicles, and thus, drivers may come within the scope of the motor carrier exemption if their duties involve 'transportation on the public highways of passengers [or property] in interstate . . commerce"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 45 (E.D.N.Y. 2010) (noting that common examples of employees who fall under the motor carrier exemption include "employees who drive an employer's motor vehicles").

Here, Apostolakis admits that he was a delivery driver; therefore, his duties necessarily affected the safe operation of vehicles in interstate commerce that had a gross vehicle weight over 10,001 pounds, regardless of whether he was ever called upon to drive any smaller vehicles or engaged in any other duties. 56.1 Stmt. ¶ 4, 6. *See e.g., Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 51 (E.D.N.Y. 2010) (holding that a person who even performs safety-affecting activities only part of the time are "every bit as overtime-exempt" as those who do so

8

full time); *Avery v. Chariots for Hire*, 748 F.Supp.2d 492, 500 (D. Md. 2010) (holding that a chauffeur who sometimes drove vehicles carrying at least eight passengers was exempt, even though he also sometimes drove smaller vehicles); *Dalton v. Sabo, Inc.*, 2010 WL 1325613 (D. Or. Apr. 1, 2010) (employees who were or could be called on in the ordinary course of their work to drive commercial motor vehicles are subject to the motor carrier exemption, even if they also drove lighter vehicles).

In addition, Apostolakis's regular interstate deliveries to New Jersey, occurring more than five times per week, and his trips to supply catering events in New Jersey, Connecticut, and Philadelphia, confirm that his driving activities directly affected safety in interstate commerce. 56.1 Stmt. ¶ 8, 11. Dough's EZ Pass records and delivery logs further substantiate these interstate activities. *Id.* ¶ 9.

Accordingly, Apostolakis is exempt from overtime under the FMCA, and his overtime claims under the FLSA must be dismissed.

## C. Plaintiff's Cause of Action for Failure to Pay Overtime under State Law is Subject to Dismissal Due to the Motor Carrier Exemption

The motor carrier exemption also operates to extinguish Plaintiff's New York state law claims relating to overtime. New York Courts recognize that because New York's overtime exemptions are specifically defined in reference to the FLSA, the FLSA's exemptions and the interpretations of the FLSA are controlling in New York. "New York's overtime provisions expressly incorporate the FLSA exemptions." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 456 (S.D.N.Y. 2008). The Eastern District of New York has found that, "New York's overtime law incorporates most of the FLSA's substantive provisions and exemptions, and a court's analysis under federal and state law will, in this and most cases, be the same."

*Kahn v. IBI Armored Serv., Inc.*, 474 F. Supp. 2d 448, 450 n. 1 (E.D.N.Y. 2007) (applying the same analysis of applicability of the motor carrier exemption to claims under both FLSA and the New York state overtime law).

Therefore, Plaintiff's overtime cause of action under the NYLL must also be dismissed.

## II.     This Court Should Decline to Exercise Supplemental Jurisdiction Over the Plaintiff's Remaining State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction" over a state law claim when the court "has dismissed all claims over which it has original jurisdiction." The Second Circuit has repeatedly emphasized that when "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. Of Trade of the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors...will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

Here, the Court should decline to exercise supplemental jurisdiction over any remaining state claims because all of Plaintiff's federal law claims, as described above, require dismissal.

## CONCLUSION

For all the foregoing reasons, the Defendants respectfully request that the Court grant their summary judgment motion to dismiss the Complaint and decline to exercise supplemental jurisdiction over the state law claims, along with such other and further relief as the Court deems just and proper.

Dated: May 14, 2025
Glen Cove, New York

_____
Adam C. Weiss, Esq.
The Law Firm of Adam C. Weiss, PLLC
3 School Street, Suite 303
Glen Cove, New York 11542
(516) 277-2323